UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAMMY BLAKE,<br>    *Plaintiff*,<br><br>    v.<br><br>RECOVERY NETWORK OF<br>PROGRAMS, INC.,<br>    *Defendant*. | No. 3:22-cv-19 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Tammy Blake ("Plaintiff") has sued her former employer, Recovery Network of Programs, Inc. ("RNP"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.* Compl., ECF No. 1-1. Ms. Blake alleges that she was subject to gender-based discrimination while working for RNP and that the company wrongfully terminated her after she requested leave under the Family Medical Leave Act to care for her disabled foster children.

RNP has moved to dismiss the Complaint for failure to state a claim, arguing that Ms. Blake's factual allegations do not present a plausible claim for relief and that her state law gender discrimination and retaliation claims are time-barred. Mot. to Dismiss, ECF No. 8.

For the following reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part**.

RNP's motion is denied as to Ms. Blake's FMLA retaliation claim (Count One).

RNP's motion is granted as to Ms. Blake's FMLA interference claim (Count Two), CFEPA associational disability claim (Count Three), CFEPA hostile work environment claim (Count Four), and CFEPA retaliation claim (Count Five). These claims are dismissed.

To the extent the deficiencies identified in this ruling can be addressed, Ms. Blake may file a motion for leave to amend the Complaint, along with the proposed Amended Complaint, by **March 10, 2023**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A.   Factual Allegations

According to the Complaint, Ms. Blake was hired by RNP as a medicating nurse in 2013 and worked for the company until she was terminated on April 6, 2020. *See* Compl. ¶¶ 5–6, 22.

The Complaint alleges an incident in February 2018 in which Ms. Blake was falsely accused of refusing to count a client's pills. *See id.* ¶ 9. After one of Ms. Blake's counselors allegedly made this accusation, Ms. Blake allegedly approached Clara Roberts to discuss it. *See id.* ¶¶ 10, 12.[1] At this point, according to the Complaint, Clinical Coordinator Edgardo Reyes aggressively told Ms. Blake, "I'm involved in this now and I'm Clara's supervisor so whatever you have to say to her you can say in front of me." *See id.* ¶ 13.

Mr. Reyes allegedly had a history of speaking to Ms. Blake in an aggressive tone. *Id.* ¶ 14. At some unspecified date, Mr. Reyes also allegedly ignored Ms. Blake's pages for assistance while answering pages from a male nurse. *Id.* ¶ 16.

Ms. Blake alleges that the same male nurse repeatedly arrived late to work and used his cell phone for personal reasons while on the job. *See id.* ¶¶ 25–26. Even though this conduct violated RNP's policies, this nurse was allegedly promoted from medicating nurse to be LPN supervisor. *See id.* ¶ 27.

---

[1] The Complaint alleges that the accusation was made by "Clara Ramos, one of defendant's counselors," and later alleges that Ms. Blake approached "Clara Roberts" to discuss the situation. *See* Compl. ¶¶ 10, 12. Neither the Complaint nor the parties' filings indicates Clara Roberts's role at RNP or whether these allegations were intended to refer to the same person.

2

On February 18, 2018, Ms. Blake allegedly filed a hostile work environment complaint with RNP's human resources department, but she alleges that the complaint was not adequately addressed. *Id.* ¶¶ 17–18.

Two years later, further problems arose when Ms. Blake allegedly applied for FMLA leave. Ms. Blake allegedly has two foster children who suffer from anxiety and depression. *Id.* ¶¶ 19, 21. On March 13, 2020, Ms. Blake allegedly completed an FMLA request for intermittent absences in order to take her foster children to medical appointments related to these conditions. *See id.* ¶ 21.

Less than four weeks later, on April 6, 2020, RNP allegedly terminated Ms. Blake's employment. *Id.* ¶ 22. RNP allegedly explained that Ms. Blake was being terminated for willful misconduct, but Ms. Blake alleges that she had not engaged in willful misconduct. *Id.* ¶¶ 23–24.

**B.     Procedural History**

On December 6, 2021, Ms. Blake filed her Complaint in Connecticut Superior Court. Compl. The Complaint asserts claims for FMLA retaliation (Count One); interference with FMLA rights (Count Two); disability discrimination by association under the CFEPA (Count Three); gender-based harassment and hostile work environment under the CFEPA (Count Four); and CFEPA retaliation (Count Five). *Id.* ¶¶ 31–54.

On January 6, 2022, RNP removed the case to federal court on the basis of federal question jurisdiction. *See* Notice of Removal, ECF No. 1.

On April 6, 2022, RNP filed a motion to dismiss. *See* Mot. to Dismiss; Mem. of Law in Supp. of Def.'s Mot. to Dismiss, ECF No. 9 ("Mem.").

On May 25, 2022, Ms. Blake filed an objection to RNP's motion to dismiss. Pl.'s Obj. to Def.'s Mot. to Dismiss, ECF No. 14 ("Opp'n").

On June 22, 2022, RNP filed a reply in support of their motion to dismiss. Reply to Obj. to Mot. to Dismiss, ECF No. 18 ("Reply").

On September 27, 2022, the case was transferred from Judge Alfred V. Covello to Judge Victor A. Bolden. Order of Transfer, ECF No. 26.

On January 24, 2023, the parties filed a Rule 26(f) Report, and on January 25, the Court issued a Scheduling Order. Rule 26(f) Report, ECF No. 36; Scheduling Order, ECF No. 37.

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.     DISCUSSION

In her Complaint, Ms. Blake asserts claims for: (1) retaliation for asserting her rights under the FMLA; (2) interference with her FMLA rights; (3) disability discrimination in violation of the CFEPA; (4) gender-based hostile work environment in violation of the CFEPA; and (5) retaliation for filing a complaint about a discriminatory workplace practice, in violation of the CFEPA. *See* Compl. ¶¶ 31–54.

RNP argues that each of Ms. Blake's claims fail because the Complaint does not allege sufficient facts to state a plausible claim. *See* Mem. at 1. RNP also contends that Ms. Blake's state law hostile work environment and retaliation claims are time-barred.

The Court will address each claim in turn.

A.   **The FMLA Claims**

"The Family and Medical Leave Act provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017) (citation omitted). To enforce these protections, the FMLA "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks omitted).

The FMLA authorizes claims for both retaliation and interference. *See Woods*, 864 F.3d at 166. An employee may bring an interference claim when the employer "has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* "Retaliation claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* (internal quotation marks omitted). Thus, these two types of claims "serve as *ex ante* and *ex post*" remedies for employees who seek to assert their rights under the FMLA. *Id.*

Here, Ms. Blake asserts both retaliation and interference claims in Counts One and Two. The Court will address each claim below.

6

1.  **The FMLA Retaliation Claim**

FMLA retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). The plaintiff must first make out a *prima facie* case of retaliation. *Id.* at 168. If the plaintiff does so, the defendant must demonstrate "a legitimate, non-discriminatory reason for its actions." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). If the defendant meets this burden, "the plaintiff must then show that defendant's proffered explanation is pretextual." *Id.*

To make out a *prima facie* case of retaliation at the first step, the plaintiff must show that "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. The evidence required to demonstrate a *prima facie* case "has been characterized as 'de minimis.'" *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 72 (D. Conn. 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)).

At the pleading stage, the plaintiff's burden is even lower. The Second Circuit has held that a plaintiff is not required to plead even "a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)).

Here, RNP argues that Ms. Blake has not adequately pled that she exercised rights under the FMLA or that she suffered an adverse employment action under circumstances giving rise to retaliatory intent—the first and fourth elements of a *prima facie* case. *See* Mem. at 7. In RNP's view, Ms. Blake's allegation that she "completed an FMLA" request is too vague and conclusory to plausibly suggest that she exercised rights protected by the FMLA. *See id.* Furthermore, RNP contends, Ms. Blake has not pled any facts to support an inference of discrimination other than the temporal proximity between her alleged FMLA request and her termination. *See id.* at 7–8. The company asserts that a temporal relationship, without more, cannot establish discriminatory motivation. *See id.* at 8 (citing *Hewett v. Triple Point Tech., Inc.*, 171 F. Supp. 3d 10, 20 (D. Conn. 2016)).

In response, Ms. Blake argues that her allegations are sufficient. With respect to the first element, Ms. Blake argues that requesting FMLA leave qualifies as a protected activity and that the allegation that she completed an FMLA request satisfies her pleading burden. *See* Opp'n at 9. With respect to the fourth element, Ms. Blake contends that temporal proximity may suggest a retaliatory motive. *See id.* Ms. Blake further argues that she does not rely solely on temporal proximity; she also asserts that the allegedly pretextual reason given for her termination and the disparate treatment of other employees plausibly suggest retaliation. *See id.*

The Court agrees.

First, Ms. Blake's allegations are sufficient to plausibly suggest that she asserted her rights under the FMLA. She alleges in her Complaint that, on March 13, 2020, she "completed an FMLA request for intermittent absences in order for her to take her foster children to medical appointments for their disabilities." Compl. ¶ 20. Ms. Blake also alleges that her foster children suffer from anxiety and depression. *Id.* ¶ 21. These allegations contain the specific date on which

8

the request was made, the specific FMLA right that was asserted (intermittent leave), and the family members whose conditions gave rise to that asserted right. These allegations provide plausible support for Ms. Blake's claim that she provided RNP with notice that was "sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302(c).

Ms. Blake's description of her communication with RNP as "an FMLA request" also suggests that she specifically mentioned the FMLA. Thus, this is not a case in which the employee requested leave for a health condition but did not mention the FMLA or provide the employer with "sufficient facts to conclude that said illness was a 'serious health condition,' a qualifying basis under the FMLA." *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 17 (D. Conn. 2018) (granting motion to dismiss).

RNP is correct that the Complaint contains little factual amplification with respect to the first element. *See* Mem. at 7. Ms. Blake does not allege specifically the form of the request, to whom she submitted the request, details of the absences requested, or how she documented her foster children's alleged serious health conditions. Ms. Blake likely would need to put forth evidence as to some of these details in order to survive a motion for summary judgment. *See, e.g.*, *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (at summary judgment stage, notice was sufficient when employee requested time off for child care—even though the written form did not reference the FMLA or the child's health condition—when the employee had discussed his son's condition often at work and had mentioned the FMLA in when discussing leave with his supervisor). But while it is a close question, the Court concludes that Ms. Blake has satisfied her minimal burden of alleging that she asserted her FMLA rights at this stage of the litigation.

Second, Ms. Blake's allegations regarding the circumstances of her termination are sufficient, at this stage, to raise an inference of retaliatory intent. RNP asserts that temporal proximity alone is insufficient to demonstrate discriminatory motivation. Mem. at 8. It is true that courts in other circuits have adopted this as a rule, at least for purposes of summary judgment. *See, e.g.*, *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.").

The Second Circuit, however, has not. Instead, courts in this Circuit have recognized that, "[a]t the *prima facie* stage, a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her protected activity and the materially adverse action that she allegedly suffered in retaliation for engaging in that activity." *Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012) (holding that a gap of less than two months between the protected activity and the plaintiff's termination was sufficient).

The Supreme Court has noted, in the context of Title VII claims analyzed under the same framework, that "[t]he cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). While the Supreme Court did not specify how close is "very close," it did contrast a case holding that a one-and-a-half-month gap is short enough to establish causation with others finding that three- or four-month gaps are not. *See id.* at 273–74 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (one-and-a-half-month period may be sufficient); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); and *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (four-month period insufficient)). The Second Circuit

has also held that a plaintiff "sufficiently alleged a causal connection between her protected complaint . . . and her termination" when she lodged her complaint "at most two months" before she was terminated. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010). As in *Gorzynski*, the gap of less than four weeks between Ms. Blake's alleged FMLA request and her termination is sufficient to survive a motion to dismiss.

The case cited by RNP, *Hewett v. Triple Point Technology, Inc.*, is not to the contrary. In *Hewett*, a court in this District granted summary judgment to the employer when the employee had "failed to uncover any evidence of retaliatory animus beyond the temporal proximity of her termination." 171 F. Supp. 3d at 20. But in that case, the plaintiff had conceded that her negative performance reviews pre-dated her protected activity. *See id.* And even in *Hewett*, the court resolved this issue against the plaintiff only on the record presented at summary judgment; the court had denied the employer's motion to dismiss "based on the close temporal relationship between Hewett's increasing requests for medical leave . . . and her termination." *Id.*

Accordingly, the Court will deny RNP's motion to dismiss as to Count One.

### 2. The FMLA Interference Claim

As noted above, an interference claim arises when an employer interferes *ex ante* with an employee's exercise of her FMLA rights. To prevail on an FMLA interference claim, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424.

RNP argues that Ms. Blake's Complaint does not plausibly allege the first, third, fourth, and fifth elements. Mem. at 9. The company contends that Ms. Blake has not pled sufficient facts

from which the Court could infer that she is an FMLA-eligible employee because she has not alleged specifically that she worked at least 1,250 hours in the preceding twelve-month period. *See id.* (citing *Smith v. Westchester County*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011)). RNP also argues that Ms. Blake has not sufficiently alleged that her foster children are "incapable of self-care because of a mental or physical disability" or that their alleged anxiety and depression meet the FMLA's definition of a serious health condition. *See id.* at 11 (quoting 29 C.F.R. §§ 825.102, 825.113). Finally, RNP points to the lack of details regarding Ms. Blake's alleged FMLA request, discussed above. *See id.* at 10.

In response, Ms. Blake argues that she has adequately pled that she was exercising or attempting to exercise her FMLA rights at the time of her termination. *See* Opp'n at 11. Thus, she contends, her allegations regarding her termination are sufficient because she no longer able to exercise these rights after she was terminated. *See id.*

The Court disagrees.

Ms. Blake has not alleged that RNP improperly denied her request for FMLA leave or discouraged her from taking FMLA leave. Instead, her interference claim is premised on the theory that, by terminating her, RNP prevented Ms. Blake from exercising rights to which she would have been entitled under the FMLA had she remained employed the company.

As other courts have recognized, however, this theory of "interference by termination" is "merely a retaliation theory in disguise." *LeClair v. Berkshire Union Free Sch. Dist.*, No. 1:08-cv-01354 LEK/RF, 2010 WL 4366897, at *6 (N.D.N.Y. Oct. 28, 2010). In *Thomsen v. Stantec, Inc.*, 483 F. App'x 620 (2d Cir. 2012), the plaintiff "failed to show that Stantec refused to authorize any FMLA leave or discouraged him from using such leave." 483 F. App'x at 622. Instead, as in this case, the plaintiff asserted "[t]hat his termination necessarily prevented him

from taking *future* FMLA leave," but the court rejected this theory and affirmed summary judgment for the employer on the plaintiff's interference claim. *Id.* at 622–23; *see also Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (plaintiff's theory that he was terminated "due to alleged performance problems that resulted from the very use of his FMLA leave" was "no more than an effort to dress Di Giovanna's retaliation claim in (barely) different clothing").

Accordingly, the Court will grant Defendant's motion to dismiss as to Count Two.

### B. The CFEPA Claims

Ms. Blake asserts three claims under the CFEPA: one for discrimination based on Ms. Blake's association with disabled individuals (Count Three); one for gender-based harassment and creation of a hostile work environment (Count Four); and one for retaliation in response to Ms. Blake's reporting and opposing gender-based harassment (Count Five). Compl. ¶¶ 43–54).

The Court will address each of these claims in turn.

#### 1. The Associational Disability Claim

The CFEPA prohibits an employer from terminating an employee or discriminating against an employee "in compensation or in terms, conditions or privileges of employment" because of the employee's disability, among other grounds. Conn. Gen. Stat. § 46a-60(b)(1). Discrimination claims asserted under the CFEPA "are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* for parallel federal claims under Title VII." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (citation omitted); *see also Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both.").

13

RNP first argues that associational disability claims are not cognizable under the CFEPA. *See* Mem. at 12. The company notes that, while the Americans with Disabilities Act specifically prohibits discrimination based on "the known disability of an individual with whom the qualified individual is known to have a relationship," 42 U.S.C. § 12112(b)(4), the CFEPA does not contain such language. *See* Mem. at 12. RNP also points to *DeMarco v. Charter Oak Temple Restoration Association*, No. HHD-cv-21-6137759S (Conn. Super. Ct. Feb. 14, 2022), *appeal pending*, No. AC 46099, in which the Connecticut Superior Court concluded that the "clear and unambiguous" language of the statute "applies only to discrimination based on an individual's disabilities." *See* Reply at 5. RNP also raises the same arguments that it made with respect to Ms. Blake's FMLA claims, arguing that her allegations are insufficient even if the CFEPA does permit associational disability claims. *See id.* at 12.

In response, Ms. Blake argues that, while no Connecticut Appellate Court has addressed this issue, the Connecticut Supreme Court would interpret the CFEPA to encompass associational disability claims. *See* Opp'n at 11–12. She cites that court's decision in *Desrosiers v. Diageo N. Am., Inc.*, 314 Conn. 773 (2014), where the court held that the CFEPA prohibited discrimination based on an employer's perception of physical disability, even though the statutory definition covered only "any individual who *has* any chronic physical handicap, infirmity or impairment." 314 Conn. at 779 (quoting Conn. Gen. Stat. § 46a-51(15)). Ms. Blake contends that the Connecticut Supreme Court would take a similar approach here in light of the CFEPA's legislative history and broad remedial purpose. *See* Opp'n at 11–12.

The Court disagrees.

In *Desrosiers*, the Connecticut Supreme Court concluded that the "clear and unambiguous" language of the CFEPA did not cover claims based on perceived physical

disability. 314 Conn. at 784. Nonetheless, the court reasoned that this interpretation of the statute would lead to absurd results, such as permitting an employer to discharge an employee based on a rumor that the employee was disabled, but only if the rumor was false. *See id.* at 785. The court therefore concluded that the legislature intended to prohibit discrimination based on perceived, as well as actual, physical disability. *See id.* at 794.

The court's reasoning in *Desrosiers* does not extend to this case. Expanding the plain language of the CFEPA to cover perceived physical disability is a far more modest interpretation than adding a new derivative claim for associational disability discrimination. Even when a statute such as the ADA explicitly authorizes a claim for association discrimination, courts have developed special rules for analyzing this type of "rarely litigated" claim. *See Graziadio*, 817 F.3d at 432 (defining the specific scenarios that could give rise to an associational disability claim). Thus, it is no small matter for a court to authorize an associational disability claim when the plain language of a statute precludes it.

Furthermore, a legislature could rationally conclude that employees should be able to bring discrimination claims based on their own protected conditions but not those of their relatives or other associates. Refusing to adopt Ms. Blake's interpretation of the statute would not lead to the same type of "bizarre result" evident in *Desrosiers*. *See* 314 Conn. at 785. In the absence of more specific guidance from the Connecticut Supreme Court or the Connecticut Appellate Court that CFEPA's plain language should be extended to permit such a claim, this Court will follow the reasoning of the Connecticut Superior Court in *DeMarco* and conclude that the CFEPA does not authorize associational disability claims.

Accordingly, the Court will grant RNP's motion to dismiss as to Count Three.

### 2. The Gender-Based Harassment and Retaliation Claims

In addition to prohibiting disability discrimination, the CFEPA prohibits an employer from harassing any employee "on the basis of sex or gender identity or expression," including by "creating an intimidating, hostile or offensive working environment." Conn. Gen. Stat. § 46a-60(b)(8). If an employee opposes such harassment or files a complaint about it, an employer may not "discharge, expel or otherwise discriminate against" the employee in retaliation for these actions. *Id.* § 46a-60(b)(4).

Ms. Blake raises claims for both gender-based harassment and retaliation. Because the statute of limitations analysis is the same for both claims, the Court will address them together.

In order to bring a CFEPA claim in federal court, a plaintiff must first exhaust her available administrative remedies by filing a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *See Collins v. Univ. of Bridgeport*, 781 F. Supp. 2d 59, 62 (D. Conn. 2011); *see also Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 217–18 (1985) ("[The plaintiff's] failure to . . . bring his complaint to the CHRO forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint.").

Under the circumstances of this case, a CFEPA claim must be filed with the CHRO "not later than three hundred days after the date of the alleged act of discrimination." Conn. Gen. Stat. § 46a-82(f)(1). Ms. Blake alleges that she filed a complaint with the CHRO on December 29, 2020. Compl. ¶ 29.

RNP argues that Ms. Blake's gender-based discrimination and retaliation claims are time-barred because they are based on alleged conduct that occurred more than 300 days before the date of Ms. Blake's CHRO complaint. *See* Mem. at 5. The company argues that these claims are

16

based on conduct that occurred around the time of the allegedly false accusation regarding a patient's pill count in February 2018, which occurred almost two years before Ms. Blake filed her CHRO complaint. *See id.*

In response, Ms. Blake argues that her claims are not time-barred because RNP created a hostile work environment through a continuing course of discriminatory conduct. *See* Opp'n at 15. Under these circumstances, Ms. Blake contends, the limitations period begins only after the last instance of discriminatory conduct occurs. *See id.* (citing *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d. Cir. 1992); and *Bd. of Educ. v. Comm'n on Hum. Rts. & Opportunities*, 177 Conn. 75 (1979)).

The Court disagrees with Ms. Blake.

Even assuming that Ms. Blake's allegations regarding events in February 2018 are sufficient to state a claim under CFEPA, her Complaint does not allege any "discrete acts that 'occurred' within the appropriate time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). In *Morgan*, the Supreme Court held that a court considering a hostile work environment claim could consider "behavior alleged outside the statutory time period" only when "an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. The Connecticut Supreme Court has adopted this principle for workplace discrimination claims as well. *See Patino v. Birken Mfg. Co.*, 304 Conn. 679, 683 n.3 (2012) (quoting the language in the preceding sentence).

Here, Ms. Blake's Complaint describes no "discrete" incidents after February 2018 that demonstrate gender-based discrimination, a hostile work environment, or retaliation for Ms. Blake's prior complaint. The bare allegation that this specific incident "was not adequately addressed" as a result of Ms. Blake's complaint to the human resources department does not

17

describe a specific act or show that any such act did occur within the limitations period. Thus, this allegation is insufficient to plead a continuing course of conduct. *Cf. Jones v. Sansom*, No. 3:21-cv-00442 (VAB), 2022 WL 972445, at *7 (D. Conn. Mar. 31, 2022) (allowing hostile work environment claim to proceed based on specific, though undated, allegations that the defendants ordered the plaintiff to wear a different uniform in order to humiliate him and refused to let him take breaks).

Ms. Blake argues that RNP's continuing harassment culminated with the accusation of willful misconduct and Ms. Blake's termination, but the Complaint offers no facts plausibly showing that these acts were based on gender-based discrimination or retaliation. Thus, because the events underlying Ms. Blake's gender-based harassment and retaliation occurred more than 300 days before she filed her CHRO complaint, these claims are time-barred.

Accordingly, the Court will grant RNP's motion to dismiss as to Counts Four and Five.

IV.   **CONCLUSION**

For the foregoing reasons, RNP's motion to dismiss is **GRANTED in part** and **DENIED in part**.

RNP's motion is denied as to Ms. Blake's FMLA retaliation claim (Count One).

RNP's motion is granted as to Ms. Blake's FMLA interference claim (Count Two), CFEPA associational disability claim (Count Three), CFEPA hostile work environment claim (Count Four), and CFEPA retaliation claim (Count Five). These claims are dismissed.

To the extent the deficiencies identified in this ruling can be addressed, Ms. Blake may file a motion for leave to amend the Complaint, along with the proposed Amended Complaint, by **March 10, 2023**.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE